**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

**BRIAN SCOTT THORNTON**                                                                 **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 3:06CV-P517-H**

**JOHN REES** *et al.*                                                           **DEFENDANTS**

**MEMORANDUM AND OPINION**

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 ("§ 1983"). The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), on Plaintiff's motion to amend his complaint (DN7), and on several other miscellaneous motions filed by Plaintiff during the pendency of this action. For the reasons set forth below, the Court will grant Plaintiff's motion to amend, dismiss this action for failure to state a claim, and deny the remaining pending motions as moot.

**I.**

Plaintiff is a self-proclaimed "'white supremacist' with a 'big swastika' on the back of [his] head," which he keeps clean shaven at all times. On July 5, 2006, while incarcerated at Kentucky State Reformatory ("KSR"), Plaintiff alleges that prison officials placed him "on the daily cell move sheet to an integrated room." Plaintiff refused to move into an integrated cell because he feared for his personal safety. As a result, he was placed in "Unit D Segregation." According to prison officials this placement was necessary "for the safety of staff and the inmate and the security of the institution" and was to last "pending an adjustment committee hearing." It appears that Plaintiff stayed in segregation until approximately July 21, 2006, at which time he was apparently assigned to a cell with another white inmate.

Plaintiff alleges that KSR's practice of "randomly assigning inmates to integrated double-cells substantially increases [the] risk for violence and creates other conditions

intolerable for prison confinement." According to Plaintiff, "when the white inmate prefers to live with the same race, KSR staff is forcing white and black inmates to live together." Plaintiff believes that inmates should initially be segregated by race and should be placed in integrated cells only if the inmates agree with the placement. Plaintiff explains:

> Personally I think that if an inmate wishes to live with another inmate of another race, then he should be allowed to do just that. However, I do not feel that I should be forced to live with another inmate of a different race against my will. This is being done on a daily basis, not only to myself but to many other white and black inmates as well.

Plaintiff alleges that KSR's practice of initially housing inmates without regard to race violates his Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff also alleges that his placement in segregation after refusing to live in a cell with a black inmate was a form of retaliation. As a result, Plaintiff has sued the following individuals in both their official and individual capacities: John Rees, Kentucky Department of Corrections Commissioner; Larry Chandler, Warden of Kentucky State Reformatory; J. Dees, "C.T.O-Dorm 10" at KSR; and Anthony Hilabryant, "C.T.D.I.-Dorm 10 " at KSR. As relief, Plaintiff is seeking $17,000 in compensatory damages, $17,000 in punitive damages, and injunctive relief requiring prison officials at KSR to stop random integrated cell assignments and to have KSR officials come up with an "inmate compatibility policy before any inmate can be housed in an integrated cell."

## II.

Plaintiff has filed a motion with the Court seeking permission amend his complaint with "additional facts" that Plaintiff believes are relevant to his claims (DN 7). In particular, Plaintiff's amendment provides additional allegations regarding his retaliation claim. Plaintiff claims that he was not provided with a pre-deprivation hearing before being placed in administrative segregation, and that Plaintiff's placement in segregation "was for punishment

2

only, and there was no legitimate governmental objective."

A party may amend a pleading once as a matter of right if it is done before a responsive pleading is served. Fed. R. Civ. P. 15(a). Since no responsive has been served and because this is Plaintiff's first proposed amendment, the Court will grant his motion to amend. Accordingly, in conducting its 28 U.S.C. § 1915A initial review, the Court will consider both the complaint and Plaintiff's subsequent amendment.

## III.

Under 28 U.S.C. § 1915A, this Court must review the instant action. 28 U.S.C. § 1915A ("The court shall review, . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *McGore*, 114 F.3d at 604-05. Upon review, this Court must dismiss "the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b). A complaint may be dismissed as frivolous under § 1915A if it is premised on a nonexistent legal interest or delusional factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In reviewing a complaint under this standard, the court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## IV.

### A. Official Capacity Money Damages Claims

The official capacity claims for damages will be dismissed on two bases. First, Defendants, as state officials and employees sued in their official capacities for damages, are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Id.* (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, Plaintiff's official capacity claims for damages against all Defendants must be dismissed.

### B. Injunctive Relief Claims

Since filing this lawsuit, Plaintiff has been transferred from KSR to the Luther Luckett Correctional Complex (DN 15). As Plaintiff has been transferred from the KSR facility, he does not face a future threat of injury in that facility. Thus, Plaintiff's request for injunctive relief was rendered moot upon his transfer, and the Court must dismiss it. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998).

### C. Fifth Amendment Claims

The Fifth Amendment of the United States Constitution, which is part of the Bill of Rights, provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land

4

> or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST., amend. V.

Plaintiff fails to explain how the Fifth Amendment applies to his claims. Based on the facts as alleged by Plaintiff, the Court does not believe that Plaintiff has a cognizable Fifth Amendment claim against Defendants in this instance. Specifically, the Court notes that to the extent that Plaintiff is attempting to rely on the due process clause of the Fifth Amendment, it circumscribes only the actions of the federal government. *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of state, not federal, officials are at issue, and the Court will dismiss the Fifth Amendment claims.

**D.     KSR's Policy of Placing Inmates in Integrated Cells**

Plaintiff claims that KSR's policy of placing prisoners in integrated cells violated the Eighth Amendment by subjecting him to a risk of substantial and imminent injury, and also violated his rights under the Equal Protection Clause. The Court will address each claim.

**1.     Eighth Amendment Claim**

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." "When a prison inmate alleges that prison officials failed to protect him from assault by another inmate, deliberate indifference on the part of the officials to the inmate's risk of injury must be shown. Lack of due care for a prisoner's safety by prison officials is insufficient to support a claim of an Eighth Amendment violation." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). "Obduracy

5

or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Id.*

In this case, Plaintiff cannot show that prison officials acted with deliberate indifference to a threat of serious harm. While the prison did have Plaintiff assigned to an integrated cell, when Plaintiff refused to move into that cell citing his fear of assault, he was placed in administrative segregation pending a determination regarding his proper placement. Furthermore, it does not appear that Plaintiff was placed in an integrated cell after he was released from segregation.

At no time does the Court find that Plaintiff was deliberately placed in a situation where he faced an imminent threat of harm. As recognized by another district court confronting a nearly identical claim:

> Although a prisoner does not have to suffer serious physical injury to be able to show he is in imminent danger of such injury, he must provide something that indicates such danger is imminent. Mere incarceration with other prisoners does not suffice, even for a self-proclaimed "separatist" that is placed in an integrated cell assignment.

*Wallace v. Cockrell*, No. 3:03-MC-98-K, 2003 U.S. Dist. LEXIS 19131 (N.D. Tex. Oct. 27, 2003).

Furthermore, the United States Supreme Court has recognized that across-the-board racial segregation of prisoners actually works to incite racial hostility and violence, not eliminate it:

> Indeed, by insisting that inmates be housed only with other inmates of the same race, it is possible that prison officials will breed further hostility among prisoners and reinforce racial and ethnic divisions. By perpetuating the notion that race matters most, racial segregation of inmates "may exacerbate the very patterns of [violence that it is] said to counteract." *Shaw v. Reno*, 509 U.S. 630, 648 (1993); *see also* Trulson & Marquart, *The Caged Melting Pot: Toward an Understanding of the Consequences of Desegregation in Prisons*, 36 Law & Soc. Rev. 743, 774 (2002) (in a study of prison desegregation, finding that "over [10 years] the rate of violence between inmates segregated by race in double cells surpassed the rate among those racially integrated"). *See also* Brief for Former State Corrections Officials as Amici Curiae 19 (opinion of former corrections officials from six States

that "racial integration of cells tends to diffuse racial tensions and thus diminish interracial violence" and that "a blanket policy of racial segregation of inmates is contrary to sound prison management").

*Johnson v. California*, 543 U.S. 499, 507-08 (2005). Thus, the policy that Plaintiff advocates would likely do more harm than good in terms of eliminating the risk of violence posed to prisoners.

In conclusion, Plaintiff has not shown either that prison officials acted with deliberate indifference in his case or that he was ever placed in imminent danger of harm. Additionally, because Plaintiff has been transferred out of KSR he cannot show that future harm is likely to occur because of KSR's integration policies.

### 2.  Equal Protection Clause

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike," *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985), with a purpose "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 445 (1923).

Here, Plaintiff has not alleged that he has been treated differently from those similarly situated. Rather, the crux of his claim is that all prisoners are randomly assigned to cells regardless of race. Thus, Plaintiff's argument is essentially that all prisoners are treated the same, and he wants them to be treated differently based on their race. Obviously, such allegations do not state a cognizable claim under the Equal Protection Clause.

### E.     Plaintiff's Placement in Segregation

Plaintiff claims that his placement in segregation violated his rights under the Due Process Clause because he did not receive any sort of a pre-deprivation hearing, and because his placement was in retaliation for complaining about KSR's use of integrated random cell assignments.

#### 1.     Fourteenth Amendment Claim

A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Sixth Circuit has repeatedly held that placement in administrative segregation does not constitute an atypical and significant hardship on the inmate. *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Thus, Plaintiff's procedural due process claim fails as a matter of law.

#### 2.     Retaliation Claim

Plaintiff's retaliation claim is likewise deficient. In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), the Sixth Circuit concluded that a prisoner's claim that prison officials have retaliated against him for engaging in protected conducted is grounded in the First Amendment. A retaliation claim has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first

two elements, *i.e.*, the prisoner's protected conducted motivated at least in part the adverse action. *Id.* at 394.

It is questionable whether Plaintiff engaged in protected conduct. In many respects, it appears that Plaintiff's objections to the proposed move were prompted more out a desire not to live with a black inmate, than they were out of a sincere belief that his safety was at risk. While in the body of his complaint, Plaintiff states that safety was his primary concern, the other documents attached by Plaintiff suggest that racial bias, not actual fear, was the motivating factor. For example, in one of his grievances concerning his placement in segregation Plaintiff states:

> I feel there is a major discriminating actions here at KSR by the administrative staff towards the white inmates here. KSR staff are knowingly and willingly racial profiling on the issue of cell assignments. When the white inmate prefers to live with the same race, KSR staff is forcing white and black inmates to live together. Staff are not giving the white inmate time to find another suitable inmate to live with. As stated before, they are force moving white and blacks to live together. There are many of us who refuse to live with a different race, therefore have went to segregation because we will not live with an inmate of another race.

Since Plaintiff does not have a constitutional right to demand to housed only with other whites, his refusal to move in with a black inmate was not protected conduct, and therefore, cannot support a retaliation claim.

Even if the Court assumed that Plaintiff engaged in protected conduct, Plaintiff fails the third prong of the *Thaddeus-X* analysis. Although Plaintiff alleges that his placement in segregation "was for punishment only, and there was no legitimate government objective," his other allegations plainly belie this assertion. He states that prior to his placement in segregation he told prison officials that because of his tattoos he "believed that there could be a substantial risk to [himself] or cellmate." Thus, it is clear from Plaintiff's allegations that it was his own statements about possible safety concerns if he were placed in an integrated cell that led to his

9

placement in segregation, not the fact that he complained about the prison's integration policy.

Indeed, the detention order states:

> On July 5, 2006, at approximately 1:10 p.m., Inmate Brian Thornton #157067 was placed in Unit D segregation due to Inmate Thornton refusing to move from Dorm 10B01U to Dorm 2C209U. Inmate Thornton refused to move to a cell with a black cellmate. For the safety of staff and inmate and the security of the institution, Inmate Thornton will remain in Unit D Segregation pending an Adjustment Committee Hearing.

Plaintiff cannot cite to safety concerns in one breath and then in the next state that the institution had no legitimate basis for concluding that Plaintiff's and other inmates' safety might be at risk if he remained in the general population mixing with inmates of all races. Simply put, the only casual connection that Plaintiff has established is that his placement in segregation was precipitated by his own assertions that his safety was at risk. Plaintiff has not properly alleged any casual connection between his placement in segregation and a desire of prison officials to punish him for raising safety concerns. As such, Plaintiff's retaliation claim must be dismissed for failure to state a claim.

The Court will enter an Order consistent with this Memorandum and Opinion.

Date:

cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

4412.008